907 P.2d 182

Robert ZAMORA, Plaintiff–Appellant,

v.

**VILLAGE OF RUIDOSO DOWNS,**
**Defendant–Appellee.**

No. 22107.

Supreme Court of New Mexico.

Oct. 26, 1995.

Hawthorne & Hawthorne, P.A., Charles E. Hawthorne, Ruidoso, for Appellant.

J. Robert Beauvais, P.A., J. Robert Beauvais, Ruidoso, for Appellee.

## OPINION

BACA, Chief Justice.

1. Appellant Robert Zamora appeals from a district court order granting a motion to dismiss in favor of Appellee Village of Ruidoso Downs. We address two issues on appeal: (1) Whether the district court erred when it concluded that the procedure to appeal a village personnel board's administrative decision was to petition the district court for a writ of certiorari, and (2) whether the district court erred when it concluded that Zamora failed to perfect a timely appeal. We review this case pursuant to SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992), affirm on the first issue, and reverse and remand on the second issue.

## I.

2. On November 13, 1986, Zamora was employed by the Village, and on March 1, 1987, he became a permanent employee. On February 25, 1990, Zamora was injured in a non-employment-related accident. Pursuant to Section 3–9–27 of the Ruidoso Village Ordinance, the mayor granted Zamora a six-month disability leave without pay.[1] On April 23 Zamora received a partial medical release and requested to be assigned to light-duty work. The mayor refused to assign light-duty work to Zamora until he received a full medical release.

3. On September 17 the Village notified Zamora that his six-month disability leave had expired and that he was relieved of his duties. On October 2 Zamora filed a written request before the Village Board of Trustees to appeal the Mayor's decision to terminate his employment. The Board of Trustees, sitting as the Ruidoso Downs Personnel Board, granted Zamora's request. On October 20, after hearing the appeal, the Board upheld the Mayor's decision to terminate Zamora's employment.

4. On February 3, 1993, Zamora filed a complaint in district court for breach of employment contract and wrongful termination, alleging that the Ordinance required the Village to assign him to light-duty work.[2] On November 15 the Village filed a motion for summary judgment in which it conceded that the Ordinance was an implied employment contract but argued that there was no light-duty work available to which Zamora could be assigned. On January 5, 1994, the Village filed a motion to dismiss pursuant to SCRA 1986, 1–012(B)(6) (Repl.Pamp.1991). The Village argued that absent a statute providing otherwise, Zamora can appeal the Board's administrative decision only by first petitioning the district court for a writ of certiorari. The Village also argued that the petition for a writ of certiorari must be filed within thirty days of the Board's administrative decision and that, by filing his complaint twenty-eight months after the fact, Zamora failed to perfect a timely appeal. On March 11 the district court filed an order granting the motion to dismiss. Zamora now appeals.

## II.

5. We address whether the district court erred by concluding the procedure to appeal a village personnel board's administrative decision was to petition the district court for a writ of certiorari. Zamora argues that the district court erred, and his argument proceeds on two points: (1) The Board lacks jurisdiction to hear his claim for breach of an implied employment contract, and (2) the scope of review at the district court is de novo. We disagree with Zamora and hold that, unless otherwise provided by statute, the correct procedure to appeal a personnel board's administrative decision is to petition the district court for a writ of certiorari.

6. "Dismissal of a contract claim on a Rule 12(b)(6) motion is a legal, not evidentiary, determination.... '[T]he court must accept as true all the facts which are pled.'" *Vigil v. Arzola*, 101 N.M. 687, 687–88, 687 P.2d 1038, 1038–39 (1984) (quoting *McCasland v. Prather*, 92 N.M. 192, 194, 585 P.2d 336, 338 (Ct.App.1978)).

### A.

7. Zamora argues that the Board does not have jurisdiction to hear his breach of implied employment contract claim because "[a]ll cases dealing with wrongful discharge by breach of contract in New Mexico have been tried *de novo*." We disagree.

8. The Board derives its authority over employment matters from NMSA 1978, Section 3–13–4(A) (Repl.Pamp.1985), which authorizes municipalities, including the Village, to establish by ordinance a merit system for

---

1. Section 3–9–27 of the Ordinance states in pertinent part: "Permanent employees may be granted personal leave without pay under certain conditions.... [T]he Mayor must approve request for more than five days.... An employee may be granted leave without pay for a period not to · exceed six (6) months because of illness or disability when certified by a physician...."

2. Section 3–7–7 of the Ordinance states in pertinent part: "Employees who have suffered disability and cannot perform their duties shall be assigned to light duty positions that they are able to perform, if such work is available."

the hiring, promotion, and discharge of municipal employees. Municipalities are also authorized to create a personnel board to administer the ordinance, Section 3–13–4(A)(1), and to establish rules including methods of employment, promotion, demotion, suspension, and discharge, Section 3–13–4(A)(2)(e). The ordinance is a "contract of employment between the municipality and an employee...." Section 3–13–4(C). Accordingly, the Village adopted an Ordinance that includes sections relating to employee discipline, termination for "just cause," and for appeal of discipline and termination decisions to the personnel board. Thus, the Board was acting within its jurisdiction afforded by statute.

9. New Mexico courts have stated that an administrative body acts in a "quasi-judicial" capacity when it is "required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." *Dugger v. City of Santa Fe*, 114 N.M. 47, 50, 834 P.2d 424, 427 (Ct.App.) (quoting *Black's Law Dictionary* 1121 (5th ed. 1979)), *cert. quashed*, 113 N.M. 744, 832 P.2d 1223 (1992). Moreover, it has long been held that "quasi[-l]judicial" capacity is determined by "the nature of the act to be performed rather than the ... board which performs it...." *State ex rel. Sisney v. Board of Comm'rs of Quay County*, 27 N.M. 228, 231, 199 P. 359, 361 (1921) (quoting 11 C.J. *Certiorari* § 67, at 121 (1917)). We find that the Board was acting in its quasi-judicial capacity when it convened to investigate the facts surrounding Zamora's discharge and to determine whether the Mayor's termination of Zamora violated the Ordinance.

■ 10. By arguing the Board has no jurisdiction to determine employment rights, Zamora has overlooked a fundamental distinction between public and private employment. A public employee who successfully can assert a property interest in employment is entitled to due process before he or she can be terminated. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

On the other hand, private employees and public employees who cannot assert a property right in employment are not constitutionally entitled to the same procedures.

■ 11. At a minimum, due process must include notice and opportunity to respond prior to termination. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). Due process "requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* at 542, 105 S.Ct. at 1493 (quoting *Roth*, 408 U.S. at 569–70, 92 S.Ct. at 2705). The pretermination hearing should be "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Id.* at 545–46, 105 S.Ct. at 1495. When a public employee alleges that his employment was terminated in violation of an employment contract, he must be afforded an opportunity to respond at the required administrative hearing. *See Boespflug v. San Juan County (In re Termination of Boespflug)*, 114 N.M. 771, 772, 845 P.2d 865, 866 (Ct.App.1992); *see, e.g., Walck v. City of Albuquerque*, 113 N.M. 533, 828 P.2d 966 (Ct.App.1992) (stating that terminated city employee appealed termination to city personnel board); *Montoya v. City of Albuquerque*, 98 N.M. 46, 644 P.2d 1035 (1982) (same).

12. In his complaint for breach of implied employment contract, Zamora argues that the Village, contrary to the Ordinance requirements, refused to assign him to light-duty work. Zamora, however, ignores the fact that this question was already considered by the Board. The Ordinance requires "just cause" before a regular employee may be dismissed, and the dismissal is "effective when endorsed by the [Board]." Section 3–7–10. The Board's task was to determine whether there were "reasonable grounds" or "just cause" to uphold the Mayor's decision. The Ordinance provides a maximum six-month disability leave without pay. After having been on leave for more than six months, Zamora told the Board he had not yet received a full medical release to return to work and he did not know when he would

obtain such a release. The Board, therefore, upheld the Mayor's decision.[3] Although the proceedings before the Board may not have been termed an action for breach of implied employment contract, those proceedings necessarily involved the question of whether the Ordinance—the basis of Zamora's alleged implied employment contract—was indeed violated.

### B.

**13.** As a second point, Zamora argues the scope of review at the district court is trial de novo. Here, too, we disagree.

**14.** As we have noted above, the Board is delegated authority to administer matters relating to employment. In that capacity, the personnel board is an "administrative" body with authority to investigate and ascertain evidence in order to determine an individual's substantive rights in employment. Absent a statute providing otherwise, the Board's determinations are reviewable at the district court only by writ of certiorari for arbitrariness, capriciousness, fraud, or lack of substantial evidence.

> [I]t is not the province of the reviewing court to interfere with a civil service commission's judgment and direct an order of affirmance or reversal of an order removing an officer, but the court is limited to a determination of whether the commission regularly pursued the authority conferred upon it, and the court may not reverse the case on the facts unless the commission acted arbitrarily or capriciously. In other words, the question of whether cause for discharge exists should generally be determined by the administrative agency and substantial deference must be given to its ruling.

4 Eugene McQuillen, *Municipal Corporations* § 12.266, at 675 (3rd ed. 1992). New Mexico has consistently followed this principle. *See Montoya v. City of Albuquerque,* 98 N.M. at 47, 644 P.2d at 1036 (quoting *Otero v. New Mexico State Police Bd.,* 83 N.M. 594, 595, 495 P.2d 374, 375 (1972) (stating rule

that district court reviews administrative decision for arbitrariness, capriciousness, fraud, or lack of substantial evidence)); *Conwell v. City of Albuquerque,* 97 N.M. 136, 138, 637 P.2d 567, 569 (1981) (stating that judicial review of administrative decision is limited to determining "whether administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substantial evidence"); *Walck,* 113 N.M. at 535, 828 P.2d at 968 (same); *Tapia v. City of Albuquerque,* 104 N.M. 117, 120–21, 717 P.2d 93, 96–97 (Ct.App.1986) (same); *Rowley v. Murray,* 106 N.M. 676, 679, 748 P.2d 973, 976 (Ct.App.1987) (stating preferred rule that, absent a *specific* statutory provision, court is confined to record made in administrative proceeding), *cert. denied,* 106 N.M. 627, 747 P.2d 922 (1987).

**15.** This appears to be the prevailing principle in other jurisdictions as well. *See, e.g., Matter of Larkin,* 415 N.W.2d 79, 81 (Minn.Ct.App.1987) (stating standard of review on writ of certiorari of city civil service commission decision was arbitrary, capricious, or lack of substantial evidence); *Bates v. City of St. Louis,* 728 S.W.2d 232, 235 (Mo.Ct.App.1987) (same).

**16.** We have recognized de novo review at the district court of administrative decisions when such review is provided by statute. *See Keller v. City of Albuquerque,* 85 N.M. 134, 137, 509 P.2d 1329, 1332 (1973) (stating that when statute provides for trial de novo for appeals from Human Rights Commission, district court has right to make independent determination from facts) *overruled on other grounds by Green v. Kase,* 113 N.M. 76, 77, 823 P.2d 318, 319 (1992); *Linton v. Farmington Mun. Schs.,* 86 N.M. 748, 749–50, 527 P.2d 789, 790–91 (1974) (same). This principle governs in other jurisdictions as well. *See, e.g., Turk v. Bradley (In re Bradley),* 75 Wyo. 144, 293 P.2d 678, 679 (1956). Interestingly, at least one jurisdiction has gone so far as to limit statutorily provided de novo review to a determination of whether an agency's ruling is illegal or not supported by

---

**3.** This is not to say, however, that the Board's decision was or was not arbitrary, capricious, or fraudulent, or not based on substantial evidence. *See Mata v. Montoya,* 91 N.M. 20, 20–21, 569

P.2d 946, 946–47 (1977). Such a determination was first for the district court if and when Appellant properly and timely appealed thereto.

substantial evidence. *Fire Dept. of Fort Worth v. City of Fort Worth*, 147 Tex. 505, 217 S.W.2d 664, 666–67 (1949); *Richardson v. City of Pasadena*, 513 S.W.2d 1, 3 (Tex. 1974). We need not go so far, however.

17. "A writ of certiorari ... lies when it is shown that an inferior court or tribunal has exceeded its jurisdiction or has proceeded *illegally,* and no appeal or other mode of review is allowed or provided." *Rainaldi v. Public Employees Ret. Bd.*, 115 N.M. 650, 654, 857 P.2d 761, 765 (1993) (emphasis added). "[J]udicial review of administrative action ... requires a determination whether the administrative decision is arbitrary, unlawful, unreasonable, capricious, or not based on substantial evidence." *Regents of Univ. of New Mexico v. Hughes*, 114 N.M. 304, 309, 838 P.2d 458, 463 (1992). An arbitrary and capricious administrative action is synonymous with an illegal action. *See id.* Zamora has not called our attention to a statute or any other provision that entitles him to a trial de novo in the district court.

18. This Court has long held that "[c]ertiorari is the appropriate process to review the proceedings of bodies ... acting in a judicial or quasi[-]judicial character...." *State ex rel. Sisney,* 27 N.M. at 231, 199 P. at 361. Hence, the correct procedure to appeal the decision of the Board was to petition the district court for writ of certiorari.

19. Zamora cites *Groendyke Transport Inc. v. New Mexico State Corp. Commission,* 101 N.M. 470, 684 P.2d 1135 (1984), to argue that the scope of review at the district court is confined to the record of the administrative hearing only when the administrative agency possesses a "special expertise" and is entitled to deference. Zamora argues the Board has no such expertise and, therefore, he is entitled to a trial de novo. Zamora misinterprets *Groendyke.* In *Groendyke* the New Mexico State Corporation Commission, after a full evidentiary hearing, denied Groendyke a certificate of public convenience and necessity. 101 N.M. at 473, 684 P.2d at 1138. Groendyke petitioned the district court for a writ of mandamus and sought to introduce evidence that had not been before the Commission. *Id.* The district court denied the petition and the introduction of evi-

dence. On appeal we explained that, unless a statutory exception applies, "[t]he district court is limited to the record before the Commission when reviewing the Commission order." *Id.* at 475, 684 P.2d at 1140. Although we recognized the Commission's "expertise," our decision was based on the absence of a statutory exception providing for de novo review. Even were we to have based our decision solely on the Commission's expertise, New Mexico nonetheless recognizes that a district court should not defer

> if the agency, rather than using its resources to develop the facts relevant to a proper interpretation, ignores the pertinent facts, or if the agency, rather than using its knowledge and expertise to discern the policies embodied in an enactment, decides on the basis of what it now believes to be the best policy.

*High Ridge Hinkle v. City of Albuquerque,* 119 N.M. 29, 40, 888 P.2d 475, 485 (Ct.App.), *cert. denied,* 119 N.M. 20, 888 P.2d 466 (1994).

20. Zamora also cites *Mata v. Montoya,* 91 N.M. 20, 569 P.2d 946 (1977), arguing it established that unless a statute provides otherwise, the scope of review in the district court of an administrative decision is de novo. Zamora misreads *Mata.* Zamora's apparent confusion of our holding in *Mata* stems from the Court's citation to *Keller,* 85 N.M. 134, 509 P.2d 1329, and the cases cited therein. In *Mata* we held that the scope of reviewing administrative decisions was limited to determining whether the administrative decision was arbitrary, capricious, fraudulent, or not supported by substantial evidence, *unless* a statutory provision permits a "wider scope of review at the district court." *Mata,* at 21, 569 P.2d at 947.

21. The cases cited in *Keller* were provided by this Court in *Mata* simply to support the general rule that when reviewing administrative decisions, the district court acts as an appellate court, not as a fact finder. *Id.* The exception to the general rule, as noted by this Court in *Mata,* is when a statute provides a greater scope of review.

22. Zamora also cites *Linney v. Board of County Comm'rs of Chaves County,* 106 N.M. 378, 743 P.2d 637 (Ct.App.1987), as an example of de novo review of an administrative decision by the district court. Zamora misapplies *Linney. Linney* involved the discharge of two jail employees by a county sheriff. Immediately prior to their discharge, the employees had been summoned to the sheriff's office where they were first notified of the complaints against them and were asked only for brief explanations. 106 N.M. at 379, 743 P.2d at 638. On appeal the district court considered only whether the jail employees received the due process standards propounded by *Loudermill* and, contrary to Zamora's assertion, not whether the discharge was a breach of employment contract. *Id.* at 379–80, 743 P.2d at 638–39.

23. Finally, Zamora calls our attention to *Wheatley v. County of Lincoln,* 118 N.M. 745, 887 P.2d 281 (1994). In *Wheatley* the Lincoln County grievance board, after an evidentiary hearing, upheld Wheatley's termination from County employment. Wheatley appealed to the district court where he sought to introduce evidence that had not been before the grievance board. The district court refused to admit the evidence, concluding that the scope of review was not de novo but was limited to whole record review. *Id.* at 747, 887 P.2d at 283. Further, the district court concluded that as long as the procedural due process requirements were met, it could not substitute its judgment for that of the grievance board. The district court reviewed the record and found that the decision to terminate Wheatley's employment was based on bad faith but, nonetheless, upheld the grievance board's decision as being based on substantial evidence. *Id.* The district court was reversed, and Wheatley was granted a full trial on the merits.

24. In *Wheatley* we expressed our concern that allowing a county personnel board to determine whether a county officer breached an employment contract may be akin to allowing "the wolf to guard the henhouse." *Id.* at 748, 887 P.2d at 248. However, we remain confident that a trial court that properly reviews the whole record for arbi-

trariness, capriciousness, fraud, or lack of substantial evidence will expose any underlying bad faith and bias in employment termination. This standard operates for such a purpose. "An administrative agency acts arbitrarily or capriciously when its action is unreasonable, irrational, wilful, and does not result from a sifting process." *Oil Transp. Co. v. New Mexico State Corp. Comm'n,* 110 N.M. 568, 572, 798 P.2d 169, 173 (1990). Further, "arbitrary" is synonymous with bad faith or failure to exercise honest judgment and an arbitrary act is one performed without an adequate determination of principle. *Huey v. Davis,* 556 S.W.2d 860, 865 (Tex.Civ. App.1977), *rev'd on other grounds,* 571 S.W.2d 859 (1978). Indeed, the district court in *Wheatley,* applying the appropriate standard, found that Wheatley's termination from employment was grounded in bad faith. Yet, the termination was upheld as being supported by substantial evidence. Having found a bad faith employment termination, the district court had sufficient grounds to reverse the personnel board's decision, and any further evidentiary inquiry was unnecessary. "The determination of whether a decision is arbitrary, capricious and unreasonable is not a question separate and apart from whether the decision is supported by substantial evidence." *Board of Educ. v. New Mexico State Bd. of Educ.,* 88 N.M. 10, 12, 536 P.2d 274 (Ct.App.1975).

25. Unless a statute provides otherwise, municipal personnel board decisions are reviewable at the district court only by writ of certiorari and on the whole record for arbitrariness, capriciousness, fraud, or lack of substantial evidence. In *Wheatley* we said that the employee was entitled to a trial de novo on his claim for breach of contract. That decision is inconsistent with our decision today (1) that municipal personnel boards are administrative agencies, the decisions of which may be reviewed on writ of certiorari by the district court, and (2) that the district court reviews such decisions on the whole record for arbitrary or capricious action, fraud, or lack of substantial evidence. To the extent of these inconsistencies, we overrule *Wheatley.*

26. In *Wheatley* we also said that "[u]nless the legislature has expressly provided a

constitutionally-sufficient independent quasi-judicial proceeding for review of termination of a tenured public employee, *see, e.g.,* NMSA 1978, § 22–10–14.1 (Supp.1994) (providing special appeals process for terminated public school employees), the employee is entitled to a trial de novo in district court." 118 N.M. at 748, 887 P.2d at 284. However, we must acknowledge that *Loudermill* does not require legislative provision of adequate guidelines to satisfy due process. Rather, the county's own personnel manual might have provided satisfactory procedures.

27. Nevertheless, we emphasize that the limitation on district court review does not preclude real scrutiny. *See State ex rel. Hughes v. City of Albuquerque*, 113 N.M. 209, 824 P.2d 349 (Ct.App.1991) (remanding matter to personnel board because conclusions and findings did not support result). As we indicated above, the district court in *Wheatley* had sufficient grounds to reverse the personnel board decision without conducting a de novo trial.

### III.

28. Finally, we address whether Zamora's complaint, filed in district court almost twenty-eight months after the Board's decision, was untimely. We note that there is no statutory time by which to file a petition for a writ of certiorari. This Court has discussed the issue previously, yet some ambiguity remains.

29. In *Eigner v. Geake*, 52 N.M. 98, 192 P.2d 310 (1948), we established that, absent a statute or court rule providing otherwise, the time limit for filing such a petition is the same as that set for appeals from a final judgment of the district courts, then being three months. We further stated that, unless there is *exceptionally good cause* for delay, there is no reason a party should have more time to ask for a writ of certiorari than he would have to take an appeal or sue out a writ of error in an ordinary case. *Id.* at 99, 192 P.2d at 310–11. "[A] party who delays more than three months in applying for a writ of certiorari is guilty of laches." *Id.*

30. After *Eigner* was decided, the statutory time limit for appeals from final judgments of the district courts suing out writs of error was shortened from three months to thirty days. In *Board of Education v. Rodriguez*, 77 N.M. 309, 311–12, 422 P.2d 351, 352 (1966), we correspondingly applied the thirty-day time limitation to the filing of writs of certiorari. In *Rodriguez* no question was raised whether there was "exceptionally good cause" to toll the time limitation.

31. In *Roberson v. Board of Educ.*, we addressed whether a petition for writ of certiorari was barred after fifteen and one-half months. We stated that

> no purely arbitrary time limit should be placed upon our right to issue certiorari; that the question should always be one of laches strictly; that where the lapse of time has not been accompanied by any change in situation, to the prejudice of a party if his victory should be turned into defeat on review, a delay ... though seriously to be considered, should not necessarily be fatal.

78 N.M. 297, 301, 430 P.2d 868, 872 (1967) (quoting *Gallup Southwestern Coal Co. v. Gallup Am. Coal Co.*, 39 N.M. 94, 40 P.2d 627 (1935)).[4] Thus, lapse of time is but one factor in determining whether certiorari is issued. We then applied laches to determine not only whether there was a lapse of time but also whether the delay prejudiced the defendant. We determined there was no prejudice and, because there was "exceptionally good cause" for delay, appellant was allowed to present her case to the district court under certiorari. *Id.* 78 N.M. at 302–03, 430 P.2d at 873–74.

32. We hold that the time limit in which a petition for writ of certiorari must be filed is determined by principles of laches. That is, in the absence of a statute providing otherwise, a petition for a writ of certiorari must be filed within thirty days of an administrative decision. If the petition is filed beyond the thirty-day limit, the district court shall consider the length of time the petition

---

**4.** The Court in *Roberson* cited *Gallup Southwestern* only for its persuasiveness. Only three of the five justices, a bare majority, participated and "found themselves divided in principle and thus unable to dispose of [the case] in a manner to make it a precedent." *Gallup Southwestern*, 39 N.M. at 97, 40 P.2d at 629.

was delayed, whether the defendant has been prejudiced by the delay, and whether the petitioner has exceptionally good cause for such a delay. Application of laches is determined on a case-by-case basis. *Hughes,* 114 N.M. at 310, 838 P.2d at 464. The district court in the instant case dismissed Zamora's case without such a determination. Accordingly, we reverse and remand to the district court to determine, by applying the foregoing analysis, whether Zamora perfected a timely appeal.

### IV.

33. In conclusion, we hold that the district court was correct in determining that, absent a specific statutory provision, the procedure to appeal the Village Personnel Board's administrative decision was to petition the district court for a writ of certiorari. Accordingly, the standard of review by the district court of an administrative decision is limited to the whole record for arbitrariness, capriciousness, fraud, or lack of substantial evidence. Finally, we reverse the district court and remand with instructions to determine whether Zamora perfected a timely appeal.

34. IT IS SO ORDERED.

RANSOM, FRANCHINI, FROST and MINZNER, JJ., concur.