787 P.2d 423 (1990)
109 N.M. 504
In the Matter of a Petition by MOUNTAIN BELL for a Determination that Public Telephone Services are Subject to Competition.
The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado Corporation, Appellant,
v.
NEW MEXICO STATE CORPORATION COMMISSION, Appellee, and
MCI, Baca Valley Telephone Company, et al., Intervenors-Appellees.
No. 17844.
Supreme Court of New Mexico.
February 14, 1990.
*424 Patrick T. Ortiz, Albuquerque, Montgomery & Andrews, Tom Olson, Rod D. Baker, Santa Fe, for appellant.
Hal Stratton, Atty. Gen., Joseph van R. Clarke, Asst. Atty. Gen., Santa Fe, for appellee Corp. Com'n.
Levin & Vance, Richard H. Levin, Albuquerque, William Levis, Mark N. Jason, Denver, Colo., for intervenor MCI.
James J. Wechsler, Albuquerque, for intervenor Baca Valley Telephone Co., et al.
OPINION
SOSA, Chief Justice.
This proceeding arises under the New Mexico Telecommunications Act (the Act), NMSA 1978, Sections 63-9A-1 to -20 (Cum. Supp. 1988, now Repl.Pamp. 1989). The Mountain States Telephone and Telegraph Company, d/b/a U S West Communications (U S West), formerly Mountain Bell, appeals from an order of the New Mexico State Corporation Commission (the Commission) denying U S West's petition for detariffing public and semi-public telephone services, both coin and coinless[1]. The order was based on the Commission's determination that the services are not subject to effective competition as defined in the Act. After a public hearing, the Commission issued its final order and findings of fact and conclusions of law. We hold the order was reasonable and just and will be enforced.
Initially, we note the appeal is from the decision of an administrative agency and not a removal case as permitted by Article XI, Section 7 of the New Mexico Constitution. The Act permits review on the record made before the Commission and does not allow the introduction of new evidence addressed to any of the issues presented at the hearing. NMSA 1978, § 63-9A-16. Further, Section 63-9A-18 provides the supreme court with the authority only to affirm or annul and vacate the order, not to modify it.
Our review is limited to determining whether the agency acted within the scope of its authority, whether the order was supported by substantial evidence, whether the decision was made fraudulently, arbitrarily or capriciously, and whether there was an abuse of discretion or show of bias by the agency. Groendyke Transp., Inc. v. New Mexico State Corp. Comm'n, 101 N.M. 470, 476-77, 684 P.2d 1135, 1141-42 (1984). In making this determination, we employ the whole record standard of review. See id. at 477, 684 P.2d at 1142; Tallman v. ABF (Arkansas Best Freight), 108 N.M. 124, 767 P.2d 363 (Ct.App.), cert. denied, 109 N.M. 33, 781 P.2d 305 (1988). This standard has been discussed in National *425 Council on Compensation Insurance v. New Mexico State Corp. Commission, 107 N.M. 278, 756 P.2d 558 (1988).
In Duke City Lumber Co. v. New Mexico Environmental Improvement Board, 101 N.M. 291, 681 P.2d 717 (1984), this Court held that for purposes of reviewing administrative decisions the substantial evidence rule is expressly modified to include whole record review. Id. at 294, 681 P.2d at 720. Under whole record review, the court views the evidence in the light most favorable to the agency decision, Wolfley v. Real Estate Comm'n, 100 N.M. 187, 668 P.2d 303 (1983), but may not view favorable evidence with total disregard to contravening evidence. New Mexico Human Servs. Dep't v. Garcia, 94 N.M. 175, 608 P.2d 151 (1980).
To conclude that an administrative decision is supported by substantial evidence in the whole record, the court must be satisfied that the evidence demonstrates the reasonableness of the decision. No part of the evidence may be exclusively relied upon if it would be unreasonable to do so. The reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency.
107 N.M. at 282, 756 P.2d at 562.
The following is a summary of the Commission's findings of fact pertinent to the issues on appeal. On August 12, 1987, U S West filed a petition requesting a determination that its public telephone services were subject to effective competition as defined in the Act, and for detariffing of the service. U S West requested that its entire New Mexico service area be considered the relevant market area, which consists of various wire centers and exchanges. Two witnesses for U S West pre-filed direct testimony and were cross-examined at the hearing held in March 1988.
One witness testified about competition and the other about the requested relief. The Commission found that "[U S West] witnesses testified that the heart of the issue of competition for Public Telephone Service is in the location of coin telephones." (Emphasis in original.) The witnesses further testified to the identity of coin-telephone equipment vendors serving various areas within the state and the availability of competing customer owned, coin-operated telephones (COCOTs) in certain wire centers. U S West introduced evidence concerning a decline in the number of public and semi-public coin telephones provided by it during 1984-87, and the corresponding growth in the number of competitive COCOTs. As of September 1987 there were 656 COCOTs served by U S West's public access lines (PAL)[2]. During cross-examination by the Commission, it was established that as of December 1987, U S West controlled 86% of the coin telephone market in the state with the remaining 14% controlled by the competitors.
The findings refer to Staff Exhibit # 2, contained in the record and prepared by U S West personnel for the Commission. The exhibit was found to demonstrate an absence of COCOTs in approximately twenty-one of the sixty-eight wire centers or exchanges, i.e., U S West is the exclusive supplier of public telephone services in these areas. Additionally, this exhibit showed that the high percentage of competitive public telephone service at three military installations in the state is attributable to federal contracts with A T & T. The Commission found that if these market segments were excluded from the total coin telephone market, U S West's relative share of the remaining coin telephone market would be greater than 86%, which, accordingly, results in a smaller share of the market represented by COCOTs.
Section 63-9A-17 places the burden on the appellant to show the unreasonableness or unlawfulness of the order. U S West contends the Commission's ruling lacks *426 support in the record and challenges the bases for the Commission's decision, claiming the Commission misconstrued and misapplied the Act's language. Specifically, U S West challenges the Commission's reliance on the market-share analysis for the following reasons: (1) the language of the Act does not specify market share as a factor of effective competition; (2) market-share analysis subverts the purposes of the Act; and (3) such an analysis as an indicator of competition is incorrect from an economic standpoint.
Under the Act, "effective competition" is defined to mean "that customers of the service have reasonably available and comparable alternatives to the service[.]" NMSA 1978, § 63-9A-3(E).
In determining whether a service is subject to effective competition, the commission shall consider the following:
(1) the extent to which services are reasonably available from alternate providers in the relevant market area;
(2) the ability of alternate providers to make functionally equivalent or substitute services readily available at competitive rates, terms and conditions; and
(3) existing economic or regulatory barriers.
NMSA 1978, § 63-9A-8(B). In other words, before U S West could succeed on its petition, the three factors must be weighed by the Commission and found to tip the balance in favor of U S West.
The constitution places upon the Commission the duty to regulate telecommunications services to the public. Mountain States Tel. & Tel. Co. v. New Mexico State Corp. Comm'n, 107 N.M. 745, 746, 764 P.2d 876, 877 (1988). "In construing article XI, section 7, we have stated that it is `difficult to conceive of a more clear and all-inclusive grant of power for a governmental agency.'" Id. at 747, 764 P.2d at 878 (quoting Mountain States Tel. & Tel. Co. v. New Mexico State Corp. Comm'n, 90 N.M. 325, 331, 563 P.2d 588, 594 (1977)). Although statutory authority specifically is granted to the Commission to regulate a public telecommunications service, see id., such provisions do not limit its constitutional authority. Coachlight Las Cruces, Ltd. v. Mountain Bell Tel. Co., 99 N.M. 796, 664 P.2d 994 (Ct.App.), cert. denied, 99 N.M. 787, 664 P.2d 985 (1983). Further, we recognize that "courts should accord deference to the interpretation given to a statute by the agency to which it is addressed." See Public Svc. Co. of N.M. v. New Mexico Pub. Svc. Co., 106 N.M. 622, 625, 747 P.2d 917, 920 (1987).
Mindful of the above, we find unpersuasive U S West's statutory-language argument. The Commission, in its discretion, appropriately could consider any relevant factor in making its determination whether to detariff pay telephone services if effective competition was found to exist. See, e.g., State v. Mountain States Tel. & Tel. Co., 54 N.M. 315, 224 P.2d 155 (1950) (commission not limited to any single formula in considering reasonableness of rates). The Commission is vested with broad authority that would permit an examination of the market-share factor in order to make a decision regarding the existence of effective competition. Accordingly, we find the Commission's reliance on this basis for its decision to be reasonable.
U S West also claims the commission's use of the market share analysis contravenes the purpose of the Act. The assertion is made that regulation of rates by the Commission is unnecessary when the means of competition appear.
The purpose of the Act is "to permit a regulatory framework that will allow an orderly transition from a regulated telecommunications industry to a competitive market environment." NMSA 1978, § 63-9A-2. The legislature's use of the term "framework" suggests structure or organization concerning service rates until "a competitive market environment" exists, or, in other words, when "effective competition" is shown to exist. In this regard, the Commission's reliance on the market share analysis again falls within its broad discretion. Because of U S West's dominance in the market, the Commission reasoned that protection of new entrants vis-a-vis the present regulatory framework, is necessary to prevent monopolistic actions *427 by the dominant provider such as retaliatory pricing schemes. We find this reasoning not inconsistent with the Act's policy "to maintain the availability of access * * * at affordable rates[,] * * * to have comparable * * * service rates, * * * [and] to encourage competition in the telecommunications industry * * *." Id.
U S West further contends the relevant market area should not be defined in terms of physically existing alternate services but rather the potential for entry into the market by an alternative supplier. Cited in support is GTE Sprint Communications Corp. of Virginia v. A T & T Communications of Virginia, Inc., 230 Va. 295, 337 S.E.2d 702 (1985), for the proposition that the "threat of competition" is sufficient to cause a provider to act as a competitor. We find the argument, however, to be without merit based upon the plain and ordinary meaning of the statutory language "extent to which services are reasonably available." See NMSA 1978, § 63-9A-8(B)(1). The statute does not refer to future availability of services or how they might be available, but rather focuses on the present set of circumstances. In interpreting statutory provisions, words should be accorded their ordinary meaning. Schmick v. State Farm Mut. Auto. Ins. Co., 103 N.M. 216, 704 P.2d 1092 (1985).
The Commission, in its discretion, properly could disagree with U S West's argument that by the mere availability of COCOT telephones from product vendors and sales catalogs, and the possibility of potential competition demonstrated the existence of effective competition. Moreover, we find the Commission reasonably could rule that emphasis should be placed on the consuming public as the customers of the service rather than the COCOT owner. The Commission's conclusion, that with an 86% share of the market U S West was the dominant supplier of public telephone services in the state, is a fact that remained unchallenged. Accordingly, we affirm the commission's determination that the absence of physical evidence or manifestation of competition activity within the wire centers or exchanges without COCOTs demonstrated a lack of effective competition.
On its brief, U S West also asserts that rather than to focus on market share as an indicator of competition, "the key indicator is that no barriers prevent equivalent alternative services from being reasonably available[.]" In the same regard, U S West submits there exists a lack of support in the record for the Commission's finding that an economic barrier is created because COCOT operators must pay PAL charges in order to provide functionally equivalent services. We disagree, noting the record contains direct testimony on this point in support of the Commission's finding. With regard to COCOT owners, U S West's first witness presented testimony that "an individual or a business [must] * * * pay [U S West] a monthly charge plus usage for the use of the Public Access Line * * * and will pay [U S West] for the Public Access Line Service." Deferring to the Commission's interpretation of the Act as we must, we determine that it was reasonable, as well as supported in the record, for the Commission to conclude that the mandatory subscription charges for PAL service creates "an economic barrier and impacts on the ability of alternative providers to make functionally equivalent services readily available at competitive rates, terms and conditions."
Finally, we find U S West's equal protection argument unpersuasive absent a determination by the Commission that effective competition existed among the providers of comparable public telecommunications services. See NMSA 1978, § 63-9A-8. We, therefore, uphold the Commission's finding that "[p]arity of regulation is not a consideration unless there is a determination of effective competition."
Based upon the above, the Commission's order is affirmed in its entirety.
IT IS SO ORDERED.
RANSOM and BACA, JJ., concur.
NOTES
[1] The services involved were identified in U S West tariffs as public telephone service, coinless public telephone service, and semi-public telephone service. Certain coin telephone installations called "Watrous pay phones," deemed necessary for public safety reasons because of their remote locations, were not included in the request.
[2] A COCOT is purchased by a property owner who must purchase access to the public switched network from U S West. Basically the property owner resells to the public the access he has purchased from U S West.