839 P.2d 650

**Richard GARCIA, Claimant–Appellant,**

v.

**COUNTY OF BERNALILLO,**
**Respondent–Appellee.**

No. 12204.

Court of Appeals of New Mexico.

Aug. 18, 1992.

Jane Bloom Yohalem, Morton S. Simon, Law Offices of Simon & Oppenheimer, Santa Fe, for petitioner-appellant.

Rudolph B. Chavez, Asst. Co. Atty., Albuquerque, for respondent-appellee.

## OPINION

FLORES, Judge.

Claimant Richard Garcia (Garcia) appeals the district court's judgment reversing the County of Bernalillo Personnel Board's (personnel board) decision reinstating Garcia to his former driving position as a voting machine technician and granting Garcia back pay. On appeal, Garcia raises essentially two issues: (1) that there is a conflict between the collective bargaining agreement (CBA) and the County of Bernalillo Safety Policy (safety policy) and that the terms of the CBA govern; and (2) that the personnel board did not act arbitrarily and capriciously, or abuse its discretion in making its determination regarding his suspension, transfer, or reinstatement. We affirm the district court's judgment.

## FACTS

Garcia was employed by the County of Bernalillo (county), as a voting machine technician, a job classified as a driving position. Garcia received citations, while off duty, for DWI and careless driving in March 1988. Garcia plead nolo contendere to the DWI charge and received a deferred sentence in July 1988. The careless driving

citation was dismissed. In October 1988, the county's safety director received information from the Motor Vehicle Department that Garcia's driver's license was revoked until July 20, 1989. On October 19, 1988, the county informed Garcia that he could continue to perform his duties as a voting machine technician as long as he did not operate any county vehicle. The county also informed Garcia that his position would be re-evaluated following the November 1988 election. Subsequently, Garcia was suspended for approximately two days and was transferred to a non-driving position as a custodian.

On January 30, 1989, the county learned that the information regarding Garcia's license revocation which was received by the county in October 1988 had been erroneous. Garcia then applied for reinstatement to his former driving position as a voting machine technician. However, the county refused to reinstate Garcia. Garcia unsuccessfully initiated a grievance procedure challenging the county's failure to transfer him to his former driving position. Garcia then appealed from the initial grievance step to the personnel board. The personnel board reinstated Garcia to his former driving position and granted Garcia retroactive pay effective February 1, 1989, the date the personnel board determined Garcia was available to fill his former driving position. The county appealed to the district court. The district court reversed the personnel board's decision and Garcia appealed to this court.

## STANDARD OF REVIEW

Appellate review of an administrative agency decision "is limited to determining whether the agency acted within the scope of its authority, whether the order was supported by substantial evidence, whether the decision was made fraudulently, arbitrarily or capriciously, and whether there was an abuse of discretion or show of bias by the agency." *In re Mountain Bell*, 109 N.M. 504, 505, 787 P.2d 423, 424 (1990). The second-tier judicial review is not a means to insure that the district court has done its job in reviewing the decision of the administrative agency, *Watson v. Town Council of Bernalillo*, 111 N.M. 374, 805 P.2d 641 (Ct.App.1991), but rather, on appeal, the role of this court is to canvass the whole record to determine if there is substantial evidence to support the decision. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 767 P.2d 363 (Ct.App.1988).

## CONFLICT BETWEEN THE CBA AND SAFETY POLICY

Garcia contends that pursuant to Section 6(F) of the CBA, a suspension for a period of up to 30 days without pay was the only penalty permitted by the CBA for conviction of DWI. Additionally, Garcia argues that the terms of the safety policy had no effect on Garcia as a county employee because Bernalillo County Ordinance 273 (ordinance), which governs employee-management relations between and among the county, its employees, and representative labor organizations, provides that the terms of the ordinance itself as well as the CBA govern relations between the county and the employees.

However, the record reveals that neither party raised this issue before the personnel board. In fact, the CBA was never accepted into evidence and is not properly part of the record. We note that the attorney for the county repeatedly made clear that the county was relying on the safety policy. Yet nowhere did Garcia or his representative make the argument that the safety policy did not apply because of its inconsistency with the CBA. In reviewing an administrative agency decision, "the general rule is that in the absence of a statute providing otherwise, the review is limited to the record made in the administrative proceeding." *Swisher v. Darden*, 59 N.M. 511, 515–16, 287 P.2d 73, 76 (1955) (quoting 42 Am.Jur. *Public Administrative Law* § 224 (1942)). At the administrative hearing, Garcia failed to argue that Section 6(F), or any other section of the CBA, applied to the facts of this case or that the terms of the CBA, rather than the terms of the safety policy, governed this case. Issues not raised in administrative proceedings will not be considered for the

first time on appeal. *Kaiser Steel Corp. v. Revenue Div., Taxation & Revenue Dep't*, 96 N.M. 117, 628 P.2d 687 (Ct.App.1981). Additionally, new theories or defenses will not be considered when raised for the first time on appeal. *Wolfley v. Real Estate Comm'n*, 100 N.M. 187, 668 P.2d 303 (1983). Therefore, we do not address this issue.

## SUSPENSION, TRANSFER, AND REINSTATEMENT

Garcia argues that the personnel board did not act arbitrarily and capriciously, and did not abuse its discretion in reaching its determination that an employee who has completed a period of suspension following a conviction for DWI, and whose driving record is "clear," is entitled to return to his driving position. We interpret the reference to Garcia's record as being "clear" as indicating that Garcia's license was not revoked by the Motor Vehicle Department.

First, we address Garcia's suspension and transfer. The safety policy, vehicle operator section, subsection B, provides in pertinent part:

4. Effective with this policy, the following provision will also apply to operators of County vehicles:

The establishment of a bad driving record as determined by the * * * Motor Vehicle Division * * * will result in that person not being allowed to drive a County vehicle, a transfer to another position, suspension, or termination. A bad driving record is defined as a pattern of violations received for such offenses as, but not limited to, careless driving, DWI, reckless driving, speeding, failure to appear in court or failure to pay penalty assessment.

\* \* \* \* \* \*

6. If a County employee[ ] who operates[ ] a County vehicle * * * *is convicted of* a D.W.I., that employee will be suspended from their position without pay. * * *

If the above suspended County employee has not bid and been selected for County employment, their suspension will continue but will exceed a period no longer than six months. * * *

If the above County employee is selected and hired for another County non-driving position, the employee will be paid appropriately within the salary range of the position upon returning to active employment status.

\* \* \* \* \* \*

8. For purposes of this section, a DWI conviction shall include a DWI conviction where a defendant is given a suspended, deferred, placed under advisement [sic] or a probation sentence, or complete[s] a court sponsored DWI School or Alcohol Treatment Program.

The county argues that the safety policy requires a six-month suspension. We do not agree. In reaching its decision, the personnel board had before it a copy of the judgment and sentence of the magistrate court which showed that Garcia's sentence for his DWI conviction was deferred. Under subsection B(8), a DWI conviction is defined to encompass a deferred sentence for purposes of the vehicle operator section of the safety policy. Pursuant to subsection B(4), the establishment of a bad driving record by an employee will result in that employee's prohibition from driving a county vehicle, a transfer to another position, suspension, or termination. A bad driving record is defined in B(4) as a pattern of violations received for offenses including, but not limited to, careless driving, DWI, reckless driving, speeding, failure to appear in court or failure to pay penalty assessment. A "pattern" is generally defined as a series of similar acts. *United States v. Beasley*, 809 F.2d 1273, 1277 (7th Cir.1987). *Cf.* NMSA 1978, § 30–42–3(D) (Repl.Pamp.1989) (definition of "pattern of violations" may be analogized with "pattern of racketeering activity" which is defined as "engaging in at least two incidents of racketeering"). As previously stated, Garcia received citations for DWI and careless driving in March 1988 and was convicted of DWI in July 1988. Additionally, there was some testimony regarding a prior DWI citation allegedly received by Garcia. In this respect, on cross-examination

the county attorney asked the following questions and Garcia responded as follows:

Q. * * * [I]t's true you have two DWI convictions on your record, don't you?

A. I don't.

Q. All right. Let's—let's go back and see if I can refresh your memory. One you admit to, that you had about seven or nine years ago.

A. It's not on my record.

*     *     *     *     *     *

Q. You got a DWI about seven or nine years ago and you went to DWI school for that one, didn't you?

A. My record's clear on that.

From the evidence presented at the administrative hearing and based on the vehicle operator section of the safety policy, the personnel board could have reasonably determined that Garcia had a bad driving record and, thus, could be prohibited from driving a county vehicle, transferred to a non-driving position, suspended, or terminated from employment. There was testimony and documentation that Garcia had been prohibited from driving a county vehicle, transferred to a non-driving position, and suspended from his position as a voting machine technician for two or two and one-half days. We defer to the agency's interpretation of a regulation to which it is addressed unless such interpretation is clearly erroneous or inconsistent with the regulation. *Environmental Improvement Div. v. Bloomfield Irrigation Dist.*, 108 N.M. 691, 778 P.2d 438 (Ct.App.1989). Therefore, we disagree with the county's argument, and the district court's finding, that the safety policy requires a six-month suspension without pay upon an employee's conviction of DWI.

Next, we address the personnel board's decision to reinstate Garcia to his former driving position. In support of his argument that the personnel board did not act arbitrarily and capriciously, and did not abuse its discretion, Garcia further argues that Section 6(G) of the CBA allows an employee to continue to perform his usual non-driving duties if his license is temporarily revoked. Garcia argues that once

his driving record was cleared and his New Mexico driving license was returned to him, he was entitled to reinstatement to his prior driving position pursuant to Section 6(G). Since Garcia has failed to raise this argument below, he is precluded from raising this argument on appeal. *See Kaiser*, 96 N.M. at 120, 628 P.2d at 690. However, we proceed by applying the whole record review standard to determine whether there was substantial evidence to support the personnel board's decision. *See Tallman*, 108 N.M. at 128–29, 767 P.2d at 368–69.

Regarding this issue, the county first argues that the personnel board's findings and decision were not supported by substantial evidence. In its letter decision, the personnel board reinstated Garcia to his former driving position of voting machine technician and granted Garcia retroactive pay from February 1, 1989, when Garcia was available to fill such position. The personnel board stated that it had found that (1) information from the Motor Vehicle Department showed Garcia's driving record was "clear"; (2) testimony also acknowledged that Garcia's driving record was "clear"; and (3) the county was aware that Garcia's driving record was "clear." Further, the county essentially argues that, pursuant to the safety policy, the only way in which Garcia could retain his employment following an arrest for DWI, would be by a court's finding of not guilty or dismissal of the charges before a plea agreement is entered into. Finally, the county argues, a clear driving record does not equate with reinstatement because Garcia has been convicted of DWI. We agree with the county's arguments.

The safety policy, vehicle operator section, subsection A, provides in pertinent part:

1. All prospective employees who will be operating County motor vehicle equipment either on or off public rights-of-way will be required to show proof that they have a current valid New Mexico Driver's License lawfully in force at the time of employment. Failure to have the appropriate New Mexico Driver's License

will result in denial of employment with Bernalillo County.

2. Prospective new employees must sign a release authorization allowing Bernalillo County to check their current and past driving record. Refusal to sign the release will result in denial of employment with Bernalillo County.

3. No applicant will be selected for County employment if they have on their driving record, an accumulation of more than twelve (12) points as identified in the State of New Mexico Motor Vehicle Division, "Point Assessment Index" during the previous three year period. Any DWI conviction during that same three year period will result in that applicant not being considered for County employment if position applied for requires driving a County vehicle either on a regular or casual basis.

4. No applicant will be deemed to have received a bonified [sic] offer of County employment until the conditions of this policy section are satisfied.

5. Paragraphs 1 through 4 of [subsection A] will apply as well to current County employees presently in a non-driving position and who are desirous of transferring to a position requiring the operation of a County vehicle. No employee currently in a non-driving position will be assigned, either temporarily or permanently, to a position requiring driving a County vehicle without meeting all requirements in paragraphs 1 through 4 of this section.

While noting that the safety policy has since been amended, subsection A(5) of the safety policy states that an employee currently in a non-driving position is bound by subsections A(1) through A(4). Additionally, subsection A(5) states that a current employee in a non-driving position will not be assigned to a position which requires driving a county vehicle unless all requirements of subsections A(1) through A(4) are met. As such, subsection A(3) states that a DWI conviction during a three year period prior to employment will result in that applicant not being considered for county employment if the position applied for requires driving a county vehicle. Here,

while an employee in a non-driving position, Garcia petitioned the personnel board for reinstatement to his former driving position within one year of his conviction of DWI. (Garcia was convicted of DWI in July 1988 and petitioned the personnel board for reinstatement in May 1989.) Subsections A(3) and A(5), when read together, require that the county not consider the application of an employee in a non-driving position, who has previously been convicted of DWI, and who is seeking a driving position, during a three year period following his conviction. Thus, after reviewing the record, we hold that the personnel board abused its discretion in reinstating Garcia to his former driving position within the three year period following his conviction of DWI.

CONCLUSION

For the reasons stated above, we affirm the district court's judgment reversing the personnel board's reinstatement of Garcia to his former driving position and granting him back pay. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

BLACK, J., concurs.

HARTZ, J., (specially concurs).

HARTZ, Judge (specially concurring).

I concur in affirmance of the district court. I agree with Judge Flores' opinion that Garcia failed to preserve at the personnel board hearing his contention on appeal that the collective bargaining agreement prevails over the terms of the county safety policy. There is no need to consider any of Garcia's other contentions. As I read Garcia's briefs on appeal to this court, all of the other contentions hinge on the contention that the collective bargaining agreement prevails over the safety policy. In particular, I do not think that Garcia's briefs on appeal raise the issues discussed in the section of Judge Flores' opinion entitled "Suspension, Transfer, and Reinstatement."