2003-NMCA-034

62 P.3d 1244

## NEW MEXICO STATE BOARD OF PSYCHOLOGIST EXAMINERS, Petitioner–Appellant,

v.

## Paula G. LAND, Ph.D., Respondent–Appellee.

### No. 22,254.

Court of Appeals of New Mexico.

Dec. 17, 2002.

Certiorari Denied, No. 27,860,
Jan. 31, 2003.

Patricia A. Madrid, Attorney General, Corliss Thalley, Assistant Attorney General, Santa Fe, NM, for Appellant.

J.E. Casados, Nancy Franchini, Gallagher, Casados & Mann, P.C., Albuquerque, NM, for Appellee.

## OPINION

BOSSON, Chief Judge.

{1} This appeal raises important issues regarding the limited scope and standard of review that a district court applies to an administrative appeal of a license revocation by a professional licensing board. Because the district court engaged in fact-finding functions and otherwise failed to follow the limited review of an appellate court, we reverse and remand with instructions to affirm the board's decision revoking the professional license.

## BACKGROUND

{2} Dr. Paula G. Land has been a licensed psychologist in New Mexico since 1986. In September 1993, Land began to treat a patient (hereinafter "patient" or "former patient") for issues related to alcohol abuse, family discord, boundary issues, depression, grief, suicide, post traumatic stress disorder (PTSD), violence, gender issues, and sexual abuse. At Land's recommendation, the patient spent approximately three weeks in a psychiatric facility during March 1994. Approximately two weeks after the patient's discharge from the hospital, Land terminated her professional relationship with the patient, and the two began to pursue a personal relationship which evolved into a romantic and sexual relationship lasting until December 1994. At that point, according to Land, the two separated due to her former patient's emotional problems, violent tendencies, and problems with alcohol.

{3} Eventually, the former patient reported Land to the New Mexico State Board of Psychologist Examiners (Board), which initiated disciplinary proceedings against Land because of her personal involvement with her former patient. After an evidentiary hearing before a hearing officer, the Board entered an order revoking Land's license to practice psychology in New Mexico. On appeal, the district court reversed Land's license revocation and ordered that the case against her be dismissed. We granted the Board's petition for certiorari.

## DISCUSSION

### Scope and Standard of Review

■ {4} We recently clarified our scope of judicial review on certiorari of an appellate decision of the district court. *See C.F.T. Dev., LLC v. Bd. of County Comm'rs,* 2001–NMCA–069, ¶¶ 6–15, 130 N.M. 775, 32 P.3d 784. We will review a district court's appellate decision when there is

(a) a conflict between the district court order and a prior appellate opinion of either this Court or the Supreme Court; (b) a conflict between the district court order and any statutory provision, ordinance or agency regulation; (c) a significant question of law under the New Mexico or United States Constitutions; or (d) an issue of substantial public interest that should be determined by this Court.

*Id.* ¶ 8; *see* Rule 12–505(D) NMRA 2002. We will not review an agency decision for an abuse of discretion, nor will we determine whether it was supported by substantial evidence. *C.F.T.,* 2001–NMCA–069, ¶¶ 9–11, 130 N.M. 775, 32 P.3d 784. Those tasks are for the district court sitting in its appellate capacity. *Id.* ¶ 9.

■ {5} When acting as an appellate court, the district court may reverse an agency decision if it determines that the agency acted fraudulently, arbitrarily or capriciously, if the decision was not supported by substantial evidence, or if the agency did not act in accordance with the law. *See* NMSA 1978, § 39–3–1.1(D) (1999); Rule 1–074(Q) NMRA 2002; *Zamora v. Vill. of Ruidoso Downs,* 120 N.M. 778, 782–85, 907 P.2d 182, 186–89 (1995) (describing district court's scope of review when reviewing final agency decision); *Las Cruces Prof'l Fire Fighters v. City of Las Cruces,* 1997–NMCA–044, ¶ 7, 123 N.M. 329, 940 P.2d 177 (same). When acting in its appellate capacity, the district court's scope and standard of review is limited in the same manner as any other appellate body. The court must view the evidence in the light most favorable to the decision of the agency and must defer to the agency's factual determinations if supported by substantial evidence. *See Zamora,* 120 N.M. at 782–83, 907

P.2d at 186–87. The district court may not substitute its judgment for that of the agency and must evaluate whether the record supports the result reached, not whether a different result could have been reached. *Family Dental Ctr. v. N.M. Bd. of Dentistry,* 97 N.M. 464, 465, 641 P.2d 495, 496 (1982); *Tapia v. City of Albuquerque,* 104 N.M. 117, 120, 717 P.2d 93, 96 (Ct.App.1986). Ordinarily, the court must defer to an agency's interpretation of its own regulations. *See W. Bluff Neighborhood Ass'n v. City of Albuquerque,* 2002–NMCA–075, ¶ 41, 132 N.M. 433, 50 P.3d 182; *High Ridge Hinkle Joint Venture v. City of Albuquerque,* 119 N.M. 29, 38, 888 P.2d 475, 484 (Ct.App.1994); *see also In re Adjustments to Franchise Fees,* 2000–NMSC–035, ¶ 10, 129 N.M. 787, 14 P.3d 525 (stating that courts will ordinarily defer to an agency when there are "legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function" (internal quotation marks and citation omitted)). A decision of the Board is reviewed in this same, limited manner if appealed on the record to the district court. *See* NMSA 1978, § 61–1–17 (1999) (providing that a person entitled to a hearing under the Uniform Licensing Act may obtain a review of an adverse board decision pursuant to Section 39–3–1.1, which grants district courts appellate jurisdiction to review agency decisions).

■ {6} In its present appeal, the Board argues that the district court failed to apply a limited standard of review, in conflict with New Mexico case law, statutory authority, and Supreme Court rules, and in so doing exceeded its appellate jurisdiction. *See* § 39–3–1.1; Rule 1–074(Q); *Zamora,* 120 N.M. at 782–85, 907 P.2d at 186–89. Pursuant to Rule 12–505(D)(5)(a) and (b), which defines our review on certiorari, we examine whether the district court misapplied or misapprehended its appellate jurisdiction. *See C.F.T.,* 2001–NMCA–069, ¶¶ 9–11, 130 N.M. 775, 32 P.3d 784; *see also Lewis v. Samson,* 2001–NMSC–035, ¶¶ 28–29, 131 N.M. 317, 35 P.3d 972 (on certiorari, discussing reversal of the Court of Appeals for failure to apply the correct standard of review to discretionary rulings of the district court). This presents a question of law, which we review de novo. *B*

*C & L Pavement Servs., Inc. v. Higgins,* 2002–NMCA–087, ¶ 2, 132 N.M. 490, 51 P.3d 533 (discussing standard of review).

**Procedural History**

{7} The Board was created pursuant to the Professional Psychologist Act, NMSA 1978, §§ 61–9–1 to –19 (1963, as amended through 2002). The Legislature empowered the Board to adopt a "code of conduct" for psychologists, hold hearings concerning the discipline of licensed psychologists, and suspend, revoke, or deny a license for violations of the code of conduct or any provision of the Act. *See* §§ 61–9–6(B), –13. By granting the Board power over licenses and discipline, "[t]he Legislature provided for a certain level of internal self-regulation, subject to limited judicial review." *Gonzales v. N.M. Bd. of Chiropractic Exam'rs,* 1998–NMSC–021, ¶ 12, 125 N.M. 418, 962 P.2d 1253.

{8} The Uniform Licensing Act, NMSA 1978, §§ 61–1–1 to –31 (1957, as amended through 2002), sets out the procedures to be followed when a professional board takes action against a licensee. A licensee must be served with a written Notice of Contemplated Action (NCA), indicating the action contemplated and "the general nature of the evidence" that, if not rebutted or explained, would justify the professional board in taking the contemplated action. Section 61–1–4(D)(1), (2).

{9} Pursuant to Section 61–9–13(A)(8), (9), the Board issued an NCA to Land alleging that Land's sexual relationship with her former patient had violated provisions of the American Psychological Association Ethical Principles of Psychologists and Code of Conduct (hereinafter "APA Code"), as well as provisions of the New Mexico Rules and Regulations for Psychologists (hereinafter "Board Rules"), which justified the suspension or revocation of her professional license. The NCA also advised Land of her right to a hearing and informed her of the procedural safeguards to which she was entitled. *See* § 61–1–8.

{10} With respect to the APA Code, the NCA alleged that Land's conduct violated two prohibitions: APA Code Standard 4.05,

which prohibits psychologists from "engag[ing] in sexual intimacies with current patients or clients," and APA Code Standard 4.07, which decrees that "[p]sychologists do not engage in sexual intimacies with a former therapy patient or client for at least two years after cessation or termination of professional services."

{11} The NCA also alleged that Land's intimate involvement with a patient or former patient violated several Board Rules. For example, Board Rule No. 1, § (A)(6) describes the "heavy social responsibility" of psychologists and warns that psychologists "must be alert to personal, social, organiza-tion[al], financial, or political situations or pressures that might lead to misuse of their influence." Similarly, Board Rule No. 1, § (B)(5) admonishes psychologists to be alert to personal issues that might lead to misuse of their influence. More specifically, Board Rule No. 1, § (F)(1) provides:

> Psychologists must be continually cognizant of their own needs and of their inherently powerful positions vis a vis clients, in order to avoid exploiting their trust and dependency. Psychologists must make every effort to avoid dual relationships with clients and/or relationships with clients which might impair their professional judgment or increase the risk of client exploitation. .... *Sexual intimacies with clients are unethical. In addition, psychologists recognize that their responsibilities to those with whom they work do not necessarily end with the last consultation or scheduled appointment.*
> Psychologists recognize that clients may need additional treatment for old or new concerns. *Therefore psychologists treat with caution and deliberateness the establishment of personal, social or romantic relationships with former clients.* This caution should be reflected by the psychologist considering such issues as (1) the likelihood of the need for additional consultation and (2) *the potential exploitation of the former client due to the psychologist's previous position and importance.*

(Emphasis added.) Finally, Board Rule No. 1, § (C)(4) requires that "psychologists *must remain abreast* of relevant federal, state, local, and agency regulations and *APA standards* concerning the conduct of their practice." (Emphasis added.)

{12} At Land's request, a formal hearing was held before a Board-appointed hearing officer, John Gluck, Ph.D. At the beginning of the hearing, Land stipulated that she had engaged in a sexual relationship with a *former* patient, within two years of the termination of professional services, in violation of APA Code Standard 4.07. As a result of this stipulation, the administrative prosecutor agreed to dismiss the allegation that Land had engaged in a sexual relationship with a *current* patient, as prohibited by APA Code Standard 4.05. The charges pertaining to the Board Rules remained intact. Land then suggested that a full evidentiary hearing might not be necessary and offered to proceed to evidence to mitigate the discipline to be imposed. Given Land's stipulation, the administrative prosecutor agreed that a full evidentiary hearing might not be necessary. However, the hearing officer determined that a hearing was necessary to develop the record and resolve factual issues about the context and motivation behind Land's relationship with her former patient, so that the Board could make a fair judgment about what sanctions might be appropriate. Accordingly, the hearing began without objection from Land.

{13} During the hearing, Land's former patient testified that the relationship became intimate shortly after her discharge from a psychiatric hospital. She testified that she "idolized" Land and characterized the relationship as being "with someone in a different power position." She described the relationship as so "devastating" that it took her two years to develop a trusting relationship with her subsequent therapist. When Land testified, she acknowledged having an intimate, consensual relationship with her former patient after their therapeutic relationship had ended. However, Land denied that her conduct was in any way improper or harmful. In addition to witness testimony, documents were introduced into the record before the hearing officer, including Land's treatment and progress notes, excerpts from her former patient's personal journal, and

correspondence between Land and her former patient.

{14} The hearing officer submitted a detailed report to the Board which proposed numerous findings of fact, critical of Land, supported by specific references to the record. According to the report, Land "present[ed] a continuing, serious risk of harm to the public." After submission of the hearing officer's report, Land filed three post-hearing pleadings with the Board: (1) a request to allow supplementation of the record; (2) a request to file findings of fact and conclusions of law; and (3) a request to appear before the Board. The Board denied all three requests.

{15} Ultimately, the Board issued its own findings of fact and conclusions of law based on the hearing officer's report and the administrative record. The Board determined that Land had violated APA Code Standard 4.07 by having a sexual relationship with a former patient within two years after professional services had terminated. That same conduct, the Board concluded, also violated four of the five Board Rules cited in the NCA. Finally, the Board found that Land continued to avoid responsibility for her actions by testifying that she "did nothing wrong," and by maintaining that a sexual relationship with a recent patient may be appropriate in some instances. The Board concluded that Land lacked sufficient commitment to its rules that are designed to protect patient welfare, and that she presented a substantial risk of serious harm to the public. The Board ordered that Land's professional license be revoked.

{16} After filing a notice of appeal with the district court, Land requested a stay of the license revocation. Land also filed a pleading in district court entitled "Supplemental Motion for an Order Staying the Operation of the Board Decision Pending the Outcome of Review." In that Supplemental Motion, Land asserted, for the first time, that APA Code Standard 4.07 had never been adopted in New Mexico and "was not the rule at the time of the alleged offense." Thus, Land concluded that the Board was attempting to "utilize a rule or regulation [APA Code Standard 4.07] passed after the conduct and prosecute based on that rule." Land argued to the court, for the first time, that the Board Rules applicable to New Mexico psychologists in 1994 "did not prohibit the conduct which ... Land was accused of committing," apparently because the Board Rules, unlike APA Code Standard 4.07, did not categorically prohibit all romantic involvement with former patients within two years. Over the Board's objection, the district court granted a stay of the license revocation. After a hearing, the district court reversed the revocation of Land's professional license and ordered that the case against her be dismissed.

{17} In its ruling, the district court did not question that the charges against Land were supported by substantial evidence. Rather, the district court concluded that the Board had "acted arbitrarily and capriciously when the hearing officer refused to rehear the matter once it was brought to his attention that the APA Code of Conduct [Standard 4.07] was not in effect at the time of the hearing." The court also concluded that the Board acted arbitrarily and capriciously by holding the hearing based on matters that were not specifically noticed to Land and that had occurred outside the five-year statute of limitations. *See* § 61–1–3.1(C) (describing statute of limitations). Because Land's professional license is a property right and subject to the protection of due process, the district court found that "Land's fundamental right of due process of law was violated by the Board's arbitrary and capricious acts." *See Mills v. N.M. State Bd. of Psychologist Exam'rs*, 1997–NMSC–028, ¶¶ 13–15, 123 N.M. 421, 941 P.2d 502 (stating that a psychologist's professional license is a property right).

## Certiorari Review of the District Court's Decision

{18} On certiorari, the Board raises three primary points for reversal. The Board argues that the court misapprehended its appellate jurisdiction when (1) the court allowed Land to challenge, for the first time on appeal, whether APA Code Standard 4.07 was actually in effect during the time of Land's relationship with her former patient; (2) the court ignored the Board's findings

that Land's conduct also violated specific Board Rules that justified revocation separately from APA Code Standard 4.07; and (3) the court based its decision on its own "findings of fact" and its own construction of the Board Rules without deferring to the findings of the Board and the Board's interpretation of its own Rules. *See* § 39–3–1.1; Rule 1–074; *Zamora*, 120 N.M. at 782–85, 907 P.2d at 186–89 (describing appellate standard of review for district court reviewing final agency decision). We examine the record of proceedings before both the Board and the district court to determine whether the court applied a correct standard of appellate review to the Board's ruling. *See* Rule 12–505(D)(5)(a), (b) (describing scope of certiorari review of district court decisions on appeal from administrative agency decisions).

{19} The Board's first point for reversal centers on one question: whether Land ever challenged the applicability of APA Code Standard 4.07 before the Board or otherwise alerted the Board to such a challenge. On appeal, Land, through her trial counsel, led the district court to believe that she had raised the issue in her post-hearing motions filed with the Board. The Board flatly denied this, maintaining that the issue was never submitted to the Board or to the hearing officer either during or after its proceedings. Nonetheless, the district court, apparently persuaded by Land's assertion, concluded that the hearing officer had acted arbitrarily by refusing to rehear the matter, "once it was brought to his attention that the APA Code of Conduct was not in effect at the time of the hearing."

{20} We have reviewed the record and find no evidence that Land ever advised the Board that APA Code Standard 4.07 was not in effect or asked the Board to rehear the case on that ground. There is no indication that the Board ever refused such a request, much less acted arbitrarily in doing so. After Land stipulated to having a sexual relationship with a former patient in violation of APA Code Standard 4.07, the issue never came up. Now, in her written briefs submitted to this Court, Land and her appellate counsel have abandoned any contention that she raised this issue initially with the Board.

The record suggests that the district court was misled by Land's trial counsel on a point of procedure critical to its appellate jurisdiction.

{21} It is fundamental that "issues not raised in administrative [hearings] will not be considered for the first time on appeal." *Wolfley v. Real Estate Comm'n*, 100 N.M. 187, 189, 668 P.2d 303, 305 (1983). In entertaining an issue that had not been raised below, the district court exceeded the limited review that characterizes an administrative appeal. *See* § 39–3–1.1; Rule 1–074; *Zamora*, 120 N.M. at 782–85, 907 P.2d at 186–89; *see also Garcia v. La Farge*, 119 N.M. 532, 540, 893 P.2d 428, 436 (1995) (stating that the preservation rule provides district courts the opportunity to correct mistakes and gives the opposing party a fair opportunity to respond).

{22} Preservation is not a mere technicality. *Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 38, 125 N.M. 748, 965 P.2d 332. Land had the burden of first presenting its argument to the Board, so that the Board could clarify whether or not APA Code Standard 4.07 was then in effect in New Mexico, or whether that Code embodied a professional standard that the Board expected of New Mexico psychologists regardless of whether the APA Code had ever been specifically adopted in New Mexico. For example, Board Rule No. 1, § (C)(4) requires that psychologists "must remain abreast of ... APA standards concerning the conduct of their practice." The Board never had the opportunity to address whether that rule incorporated the APA Code in New Mexico. Similarly, the Board should have been given the opportunity to clarify the degree to which Land's conduct violated other Board Rules, even if the APA Code was not in effect. *See, e.g.,* Board Rule No. 1, § (F)(1) ("[P]sychologists treat with caution and deliberateness the establishment of personal, social or romantic relationships with former clients.").

{23} Interestingly, the district court also characterized Land's argument about the inapplicability of APA Code Standard 4.07 as "newly discovered evidence," which confirms our view that the district court confused the limited scope of appellate review imposed by

Section 39–3–1.1 and Rule 1–074 with the fact-finding function that normally adheres to the role of a district court. *Compare* Rule 1–060(B)(2) NMRA 2002 (allowing district courts, sitting in their usual capacity as trial courts, to allow relief from judgment where there is "newly discovered evidence") *with* Rule 1–074(Q) (describing scope of review of district court upon appeal from an administrative decision).

{24} Not only did the district court err by finding that Land's attorney had raised this issue with the Board, the court went on to reach its own determination on the applicability of the APA Code and found that "Standard 4.07 of the APA Code was not in effect." The court then concluded that the Board had acted arbitrarily and capriciously by refusing to reconsider Land's license revocation for reasons we now know were never presented to it.

{25} Land suggests that she was entitled to raise the applicability of APA Code Standard 4.07 directly with the district court, and bypass the Board, because the Board committed fundamental error. Land claims that, by basing the revocation of her license solely on the violation of a rule that was not in effect, the Board violated her right to due process of law, which she argues can be raised for the first time on appeal. We are not persuaded. First, the fundamental error doctrine does not apply to civil cases except in the most extraordinary circumstances. *See State ex. rel. Children, Youth, & Families Dep't v. Paul P., Jr.*, 1999–NMCA–077, ¶ 14, 127 N.M. 492, 983 P.2d 1011 (stating that, although fundamental error does not generally apply in civil cases, we will apply the doctrine in "exceptional cases"); *see also Moody v. Stribling*, 1999–NMCA–094, ¶ 45, 127 N.M. 630, 985 P.2d 1210 ("Due process claims are not exempt from the fundamental requirement of preservation."). Second, fundamental error is generally limited to those instances in which the innocence of the accused remains unassailable, and to allow the conviction to stand would shock the conscience of the court. *See State v. Cunningham*, 2000–NMSC–009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (noting that the doctrine is reserved "for the protection of those whose

innocence appears indisputably, or open to such question that it would shock the conscience to permit the conviction to stand" (internal quotation marks and citation omitted)). Such an argument does not persuade us.

{26} Land has never denied the Board's finding that she did, in fact, have a sexual relationship with her former patient, shortly after discontinuing therapy. The Board is charged with protecting the public by enforcing professional standards with respect to the conduct of its licensees. Based on the extensive factual and evidentiary record below, it should not shock any court's conscience that the Board would revoke Land's license in the interest of protecting the public.

{27} We also see no fundamental error because, even if we were to assume that APA Code Standard 4.07 was not in effect at the time of Land's relationship with her former patient, the Board Rules did apply to Land, and she violated those Board Rules independently of the APA Code. Thus, we agree with the Board's second ground for reversal. The court ignored the Board's own findings pertaining to Land's violation of Board Rules.

{28} The record is clear that Land's license revocation was not based solely on her violation of APA Code Standard 4.07; it was equally based on Land's violation of several enumerated Board Rules. We quote those findings in detail to clarify the rationale behind the Board's decision to revoke:

(a) Respondent violated Rule No. 1, § (A)(6) in that respondent failed to recognize or be alert to the potential misuse of her influence over [the former patient] in their personal, social, and financial situations.

(b) Respondent violated Rule No. 1, § (B)(5) in that respondent failed to recognize or appreciate that her personal/sexual relationship with [her former patient] would interfere with her effectiveness as a professional in carrying out her responsibility to protect the interests of her patient or former patient.

(c) Respondent violated Rule No. 1, § (B)(5) in that respondent allowed her

desire for a personal/sexual relationship between herself and [her former patient] to lead to inadequate professional services in that respondent did not reasonably, adequately, and professionally assess her patient's stability, progress, and immediate treatment needs after her release from the hospital, which harmed [her]. [The former patient] was harmed in that she had difficulty establishing a trusting patient-therapist relationship with a subsequent therapist, which substantially impeded or delayed [her]efforts at recovery through therapy.

(d) Respondent violated Rule No. 1, § (C)(4) in that respondent failed to remain abreast of relevant agency regulations and APA standards concerning the conduct of her practice.

(e) Respondent violated Rule No. 1, § (F)(1) in that respondent failed to remain cognizant of her own needs and failed to be continually cognizant of her inherently powerful position *vis a vis* [her former patient]. Respondent's failure resulted in inadequate professional services before terminating the professional relationship and an exploitation of [her former patient's] trust and dependency for respondent's own benefit.

(f) Respondent violated Rule No. 1, § (F)(1) in that respondent failed to recognize that her responsibilities to [her former patient] does [sic] not end with the last consultation or scheduled appointment. As a result, respondent breached her responsibility to her former patient by engaging in a personal/sexual relationship with [her former patient] which placed her own personal needs and desires above the professional needs of her former patient.

(g) Respondent violated Rule No. 1, § (F)(1) in that respondent was not cautious or deliberate before establishing a personal/sexual relationship with her former patient. Respondent was aware that [her former patient] would continue to require professional treatment after her release from the hospital. Respondent failed to consider the potential of exploitation of [her former patient] due to [her] vulnerability and [her] reduced judgment, failed to

consider the likelihood that [her former patient] would need additional professional consultation, failed to appreciate her own inherently superior position of power, and failed to consider the importance of respondent in [her former patient's] life. Respondent was negligent and displayed a self-serving attitude in deciding to pursue a personal/sexual relationship with her former patient so soon after [her] release from a psychiatric facility without exercising adequate professional judgment to assess [her] present and future treatment needs. Respondent breached her ongoing duty to protect the interests of her former patient.

{29} The Board tried to make clear to the district court that Land had violated not only the APA Code, but these Board Rules as well. The Board argued that Land's license revocation was based on "serious violations that go to the core of the psychologist-patient relationship," and it alerted the district court that Land's violation of the Board Rules constituted an independent ground for revocation of her license. Nevertheless, the district court "found," on its own, that the Board "was only pursuing the aspect of the case that dealt with Dr. Land's violation of the American Psychological Association ("APA") Code of Conduct Standard 4.07."

{30} After Land's stipulation, the administrative prosecutor agreed to drop the charges alleging that Land had a sexual relationship with a current patient, in violation of APA Code Standard 4.05, and to only "purs[ue] that aspect which deals with the two-year period subsequent to the cessation of the professional relationship." The record does not support the view that the Board dropped the other charges against Land based on the Board Rules, insofar as those charges arise from the same two-year period. At the administrative hearing, Land acknowledged that "what happens whenever you violate the one rule, you will involve several other rules because they violate the same ethical conduct." When the administrative prosecutor agreed to pursue only those charges related to Land's conduct following the termination of therapy, that did not leave APA Code Standard 4.07 as the only remain-

ing charge. As we discussed above, the Board made specific findings supported in the record relating to Land's violation of several Board Rules. *See Tapia*, 104 N.M. at 120, 717 P.2d at 96 (stating that appellate court must not re-weigh evidence or substitute its judgment for that of the fact finder). The court was not free to disregard those findings regarding Land's violation of the Board Rules.

{31} By way of its third argument for reversal, the Board points out that the district court, sitting as an appellate court, seemingly offered no deference to the Board's construction of its own rules. *See W. Bluff Neighborhood Ass'n*, 2002–NMCA–075, ¶ 41, 132 N.M. 433, 50 P.3d 182 (stating that an appellate body must ordinarily accord deference to an agency's interpretation of its own regulations). The district court determined that the Board Rules "did not preclude intimacies after the termination of the professional relationship," although the Board had already interpreted its own rules to the contrary.

{32} As interpreted by the Board in the context of this case and discussed in its findings and conclusions, the Board Rules did preclude such intimacies. Even if the Board Rules did not present an absolute, bright-line bar against all intimacies with former patients or establish a particular point in time when such intimacies became permissible, the Board Rules clearly admonish psychologists to use the utmost caution in establishing personal relationships with former patients because of the inherent power imbalance between psychologists and patients and the resulting risk of exploitation. *See* Board Rule No. 1, §§ (A)(6), (B)(5), (F)(1). The Board specifically found that Land violated these Board Rules by not exercising the requisite caution or appreciating that power imbalance and the resulting risk of abuse. Notably, the district court never questioned the sufficiency of evidence to support the Board's comprehensive findings regarding Land's violation of Board Rules.

{33} We find the district court's lack of deference significant, and we agree with the Board's third argument for reversal. The Board has been empowered by the Legislature to set standards of conduct for psychologists and to revoke professional licenses when appropriate in response to the violation of those standards. *See* §§ 61–9–6(B), –13. Given that the practice of psychology, by its very nature, requires a specialized understanding of the subtleties of interpersonal dynamics, we are unmoved by Land's argument that the Board Rules do not provide adequate notice because they fail to provide a bright-line rule and require instead an exercise of professional judgment on the part of the licensee and the Board. *See, e.g., State v. Leiding*, 112 N.M. 143, 144–45, 812 P.2d 797, 798–99 (Ct.App.1991) (discussing the complex, emotional responses that therapy patients often exhibit toward their therapists, including the tendency to emulate them and view them as authority figures).

{34} The Board Rules outline general professionalism standards that the Board considers, on a case-by-case basis in the context of specific facts, to determine whether a licensee has appropriately protected the interests of a patient or former patient. In this instance, the Board acted within its statutory authority and determined that Land violated Board Rules by engaging in a sexual relationship with a vulnerable, recent patient, without exercising an appropriate level of caution and deliberation. *See* §§ 61–9–6(B), –13. The Board had the authority and responsibility to make that determination, and an appellate court is obliged to affirm that determination when supported by substantial evidence, as long as the Board has otherwise acted within its statutory authority.

**Additional Grounds for Reversal**

■ {35} The district court also concluded that "[t]he Board acted arbitrarily and capriciously when the Hearing Officer continued to hold the hearing based upon other matters not specifically noticed to [Land] and acts which occurred outside the [five-]year statute of limitations." We address this question on appeal only insofar as it satisfies our limited scope of review on certiorari. *See* Rule 12–505(D) NMRA 2002; *C.F.T.*, 2001–NMCA–069, ¶¶ 6–8, 130 N.M. 775, 32 P.3d 784.

{36} The Uniform Licensing Act provides that an NCA must describe "the general nature of the evidence" that, if not rebutted or explained, would justify the Board in taking the contemplated action. Section 61–1–4(D)(1). The NCA need not contain extensive evidentiary detail, but serves the same function as a complaint in a civil case. *Weiss v. N.M. Bd. of Dentistry*, 110 N.M. 574, 581, 798 P.2d 175, 182 (1990). The NCA alleged that "[w]hile ... still a patient or at some period within a two year period after [the patient] ceased being a patient, [Land] became sexually intimate with [her patient], which intimacy continued until December, 1994." The NCA also alleged that Land allowed her former patient to move into her home and perform "chores" around the house to work off an unpaid bill. Finally, the NCA specified which APA Code Standards and Board Rules Land had allegedly violated and informed her of the procedural safeguards to which she was entitled.

{37} At the administrative hearing, with no objection from Land, the hearing officer questioned Land about the therapeutic techniques she used to treat her former patient and to assess the need for further treatment following the patient's hospitalization. Land argued, before the district court, that she had no notice of charges related to how she conducted her practice. However, because Land does not develop this argument in her briefing before this Court, we will not discuss it in great detail.

{38} The record indicates that Land had notice of the "general nature of the evidence" that allegedly constituted a violation of the APA Code and the Board Rules. *See* § 61–1–4(D)(2). For example, the relevant Board Rules, which were quoted in the NCA, provide that personal relationships with former clients should only be entered with "caution and deliberateness," which should be reflected by the psychologist considering issues such as the need for future treatment and the potential for exploitation of the client. Board Rule, No. 1, § (F)(1). This afforded Land adequate notice that she might be questioned regarding what means she had used to assess her former patient's needs and potential for exploitation.

{39} Furthermore, Land failed to object to the admission of any evidence that was related to the Board's findings of fact. *See Wolfley*, 100 N.M. at 189, 668 P.2d at 305 (stating that issues not raised in administrative hearings will not be considered for the first time on appeal); *Garcia v. County of Bernalillo*, 114 N.M. 440, 441–42, 839 P.2d 650, 651–52 (Ct.App.1992) (same); *see also Leithead v. City of Santa Fe*, 1997–NMCA–041, ¶ 28, 123 N.M. 353, 940 P.2d 459 (stating that parties "cannot complain about unfairness when [they do] not take all the measures reasonably available to protect [themselves] as ... litigant[s]"). Because the NCA complied with the statutory requirements, relevant case law, and due process, the district court erred in determining that the Board failed to give proper notice to Land and acted arbitrarily and capriciously. *See* § 61–1–4; *Weiss*, 110 N.M. at 580–82, 798 P.2d at 181–83.

{40} After the administrative prosecutor agreed to Land's stipulation, the remaining charges related only to Land's personal involvement with her former patient following the termination of their therapeutic relationship. Events that occurred before July 19, 1994, were outside the applicable five-year statute of limitations. Section 61–1–3.1. Land argued to the district court that the hearing officer acted improperly by allowing evidence regarding events that occurred before that date. For example, the record shows that the hearing officer allowed testimony regarding the therapeutic relationship, the patient's hospitalization, and her subsequent discharge, each of which occurred before July 19, 1994.

{41} Land failed to object at the administrative hearing to evidence concerning events that occurred outside of the statute of limitations. *See Wolfley*, 100 N.M. at 189, 668 P.2d at 305 (stating that issues not raised in administrative proceedings will not be considered for the first time on appeal); *Garcia*, 114 N.M. at 442, 839 P.2d at 652 (same). In fact, Land only referred to the statute of limitations at the beginning of the administrative hearing, when she raised the issue in relation to the dismissed APA Code Standard 4.05 allegation, which prohibits a psy-

chologist from having a sexual relationship with a current patient. Referring to the statute of limitations and to her stipulation that she had begun a sexual relationship with a former patient within two years after the termination of therapy, Land stated that "the resolution that we're going to propose for today's hearing will take care of that particular problem," meaning that the dismissal of the APA Code Standard 4.05 charge would take care of the statute of limitations issue. Land did not, by this limited reference to the statute of limitations, adequately object to questions regarding events that occurred before July 19, 1994, insofar as they concerned other charges. Nor did Land raise this issue in her post-hearing motions to the Board. Accordingly, the district court erred by considering this matter on appeal. *See Wolfley,* 100 N.M. at 189, 668 P.2d at 305.

{42} Furthermore, it was necessary for evidence of the therapeutic relationship to be presented in order to provide context and background, even though it preceded July 19, 1994. This testimony, which related to the former patient's psychological condition and to her trust and dependency on Land, was relevant to Land's knowledge and to the Board's determination of whether Land disregarded her professional duty to a former patient. Although Land began an intimate relationship with a vulnerable, recent patient outside of the statute of limitations, Land's improper conduct continued well beyond July 19, 1994, within the applicable statute of limitations. The hearing officer did not act arbitrarily or capriciously by allowing this line of questioning.

**CONCLUSION**

{43} We reverse and remand with instructions that the Board's revocation of Land's professional license be affirmed.

{44} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and RODERICK T. KENNEDY, Judges.